*840 OPINION.
Marquette:
The taxpayer claims that by reason of the representations made to purchasers that the amounts derived from the sale of lots would be used in drilling wells, they became trust funds in its hands which were dedicated to the development of its property, and which it was compelled to expend for that purpose, and that no part thereof constituted income within the meaning of the law. On the other hand, the Commissioner contends that the company was under no obligation to drill the wells, and that if it was under such obligation the drilling of the wells was a separate and distinct transaction from the sale of the lots. We are unable to agree with either position. Whatever representations were made by the taxpayer to purchasers of lots, the contract of the taxpayer was contained in the covenants in the deeds, and prior agreements must be considered as merged therein. The taxpayer’s obligation was to drill four wells on the subdivision; the first well to be commenced when 25 per cent of the lots were sold and paid for; the second well when 50 per cent were sold; the third well when 75 per cent were sold; and the fourth well when the balance of the lots were sold. During the year in question but 25 per cent of the lots were sold, and the taxpayer, under its covenants, was bound to drill but one well. The cost of drilling this well is therefore an additional cost of the property and a proper charge against the sale price of the lots sold during 1919 before determining the gain derived from the sale thereof. The gain to the taxpayer is the difference between the selling price of the lots and the cost thereof plus the cost of the well.